**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

MAHZIAR
DEHGHANIGHANATGHESTANI,

      Plaintiff,

     v.

MARIO MESQUITA, *et al.*,

      Defendants.

Civil Action No. 22-2595 (CKK)

---

**MEMORANDUM OPINION**
(September 22, 2022)

    Plaintiff Mahziar Dehghanighanatghestani is a selectee of the Diversity Visa Lottery for the 2022 fiscal year. By statute, his eligibility to receive a diversity visa expires on September 30, 2022. Plaintiff was interviewed by a consular officer at the United States Embassy in Vienna, Austria on July 26, 2022, but subsequently received notice that his visa petition was "refused" under INA § 221(g), which directed Plaintiff to provide additional documentation in support of his visa application. Based on the record presently before the Court, Plaintiff's application remains in "administrative processing."

    Plaintiff filed an [6] Emergency Motion for a Temporary Restraining ("TRO") and Preliminary Injunction ("PI") on September 2, 2022. Therein, Plaintiff requests an order "enjoining" Defendants "from continuing the delay in processing his diversity visa." Pl.'s TRO/PI Mot. at 11. In response to Plaintiff's TRO Motion, Defendants filed a consolidated [9, 10] Opposition and Cross-Motion to Dismiss. Upon consideration of the pleadings,[1] the relevant legal

---

[1] The Court's consideration has focused on the following:
  ▪  Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Pl.'s TRO/PI Mot."), ECF No. 6;

authorities, and the record as a whole, the Court **DENIES** Plaintiff's [6] Motion for a Temporary

Restraining Order and **HOLDS IN ABEYANCE** [9] Defendants' Motion to Dismiss.  The parties

shall file a joint status report on **SEPTEMBER 30, 2022**, updating the Court on the status of

Plaintiff's visa application and addressing whether, in light of that status, Plaintiff shall voluntarily

dismiss this case, whether his claims are moot, and/or whether the Court should proceed to rule on

Defendants' motion to dismiss, which is now ripe.

## I.    BACKGROUND

### A.  The Diversity Visa Program

Under the Immigration and Nationality Act ("INA"), "Congress has provided for up to

55,000 immigrant diversity visas to be distributed each fiscal year to foreign nationals that hail

from countries with historically low levels of immigration to the United States." *Filazapovich v.*

*Dep't of State*, No. 21-cv-943 (APM), 2021 WL 4127726, at *2 (D.D.C. Sept. 9, 2021) (citing 8

U.S.C. §§ 1151(e), 1153(c)).  "Millions of hopefuls enter a lottery for the chance to apply for one

of the 55,000 allotted diversity visas." *Id.*  (citing *Gomez v. Trump* (*"Gomez I"*), 485 F. Supp. 3d

145, 159 (D.D.C. 2020)).    The selectees of the lottery "submit an application and various

documents to be eligible for a visa number," which can be used only during the fiscal year for

which the selectee applied.  *Almaqrami v. Pompeo*, 933 F.3d 774, 776–77 (D.C. Cir. 2019).

---

- ▪ Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiff's Complaint and Defendants' Opposition to Plaintiff's Motion for TRO/PI ("Defs.' Opp'n & Mot. to Dismiss"), ECF Nos. 9, 10;
- ▪ Plaintiff's Memorandum of Points & Authorities in Opposition to Defendants' Motion to Dismiss and [in Reply] to Defendants' Opposition to Plaintiff's Motion for TRO/PI ("Pl.'s Reply"), ECF No. 12; and
- ▪ Defendants' Reply in Further Support of Defendants' Motion to Dismiss Plaintiffs' Complaint ("Defs.' Reply"), ECF No. 15.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

Selectees are required to submit supporting documents to the Kentucky Consular Center (KCC), which then reviews the submitted materials for completion, and, upon deeming the applicant "documentarily qualified," schedules an interview at a local consular office for the applicant when [his] regional lottery rank number is about to become current.   9 FAM 502.6-4(d)(2).   As of December 9, 2021, the Department of State "initiated a pilot program" for FY2022, pursuant to which diversity visa lottery selectees "need only submit a complete DS-260" and "do not need to submit any other required documents" to the KCC before it "is able to complete processing of their case."   Defs.' Opp'n & Mot. to Dismiss Ex. B, Declaration of Morgan Miles ("Miles Decl.") ¶ 6, ECF No. 9-4.   Rather, "selectees will submit all required supporting documents to the designated interviewing post, which will evaluate the documents."[2]  *Id.*   The designated post is based on the "selectee's declared place of residence."  *Id.* ¶ 7.

A visa interview is scheduled only if (1) the selectee has submitted the required DS-260 application—or, if "prior to December 9, 2021, a completed DS-260 and required supporting documents"; (2) the designated post has an appointment available; (3) KCC has completed its processing of the selectee's case; and (4) a visa number has been allocated to the selectee and "that case is the next case in the selection order."   *Id.*  ¶ 9.   "[T]he availability of interview appointments may depend on the available resources and competing demands of consulates in an applicant's country of residence."   *Gjoci v. Dep't of State*, Case No. 21-cv-294-RCL, 2021 WL 3912143, at *2 (D.D.C. Sept. 1, 2021); *see also* Miles Decl. ¶ 9 (explaining that each post has a "separate processing queue").

---

[2] It is not clear from the record whether Plaintiff's application was part of the "pilot program" referenced in the Miles Declaration; however it appears that Plaintiff submitted his visa application before this program became effective.  *See* Compl. ¶ 1.

All immigrant visa applications must be reviewed and adjudicated by a consular officer. 8 U.S.C. § 1202(b).  "Because the diversity visa program restarts each fiscal year, consular officers may not issue diversity visas after midnight on September 30 of the [fiscal year]."  *Almaqrami*, 933 F.3d at 777.  As a result, "[i]f the selectee does not receive a visa by the end of the fiscal year . . he is out of luck[.]"  *Gomez I*, 485 F. Supp. 3d at 159.

Demand for diversity visas "regularly outstrips supply."  *Id.*  (noting, for example, that "in Fiscal Year 2018, there were 14.7 million qualified entries"); *see also P.K. v. Tillerson*, 302 F. Supp. 3d 1, 3 (D.D.C. 2017) ("Millions of people enter the lottery every year.").  Moreover, the "total number of lottery selectees exceeds the statutory numerical limit of visas" allocated to the DV program because if the Department "did not over select DV participants, it would not be able to use the full allocation of DV numbers."  Miles Decl. ¶ 4.  "Those selected for the [diversity visa] program are not guaranteed a visa—only the opportunity to apply for one."  *P.K.*, 302 F. Supp. 3d at 3.  According to Defendants, 63,753 people were selected from the Fiscal Year 2022 Diversity Visa ("DV-2022") lottery, accounting for 118,513 diversity visa applicants (including selectees' spouses and children) seeking one of approximately 55,000 available visas.  Miles Decl. ¶ 3.

## B.  Factual Background

Plaintiff Mahziar Dehghanighanatghestani is a citizen of Iran who presently resides in Austria.  Compl. ¶¶ 2, 9; Pl.'s TRO/PI Mot. Ex. B, at 16, ECF No. 6-2.[3]  On May 8, 2021, Plaintiff was notified that he had been selected in the diversity visa lottery for FY2022.  Compl. ¶ 1; Pl.'s TRO/PI Mot. Ex. A, ECF No. 6-1.  He applied for a diversity visa in September 2021. Compl. ¶ 1.

---

[3] Exhibit B to Plaintiff's TRO Motion includes several different email chains.  The Court's citations to this exhibit refer to the page number generated by ECF at the top of each page.

On April 28, 2022, Plaintiff contacted the U.S. Consulate in Vienna, indicating that his visa number was "current" as of the "last Visa Bulletin for June" and that his "documents were processed in March." Pl.'s TRO/PI Mot. Ex. B, at 16. He requested an interview, to which he received a response indicating that he "need[ed] to wait until [he] receive[d] a confirmation from KCC for an interview at the U.S. Consulate Vienna." *Id.* at 17.

On May 19, 2022, the Consulate contacted Plaintiff indicating he had been scheduled for an interview on July 8, 2022. *Id.* at 14. The Consulate later postponed his interview to July 26, 2022. *Id.* at 13. On July 26, 2022, Plaintiff "executed his visa application and was interviewed by a consular officer at the U.S. Embassy in Vienna, Austria." Defs.' Opp'n & Mot. to Dismiss Ex. A, Declaration of Stephanie Woodard ("Woodard Decl.") ¶ 4, ECF No. 9-3. Following his interview, a consular "refused" Plaintiff's visa application under § 221(g) of the INA. *Id.*; *see also* Pl.'s TRO/PI Mot. Ex. B, at 18. The notice of refusal indicates that Plaintiff's case "requires further processing," and that to "reopen [the] case," Plaintiff must submit "written response to supplemental questions that will be sent to you via email." Pl.'s TRO/PI Mot. Ex. B, at 18.

Based on the email correspondence submitted by Plaintiff in support of his TRO/PI Motion, the Consulate contacted Plaintiff by email on July 26, 2022, indicating that "to complete the DV visa process, we require some additional information at this time." *Id.* at 6. The email then requests information pertaining to, among other items, Plaintiff's travel and passport history, his relatives, his address and contact information, his social media accounts, any military service, and his past employment history/business endeavors. *Id.* at 6–7. Plaintiff was also directed to send "the Iranian military exemption card or a copy of that stamp in your passport together with a translation." *Id.* at 7. Plaintiff promptly provided responses to these questions on July 27, 2022, and attached four documents containing stamps in his passport and their translations. *Id.* at 8–11.

The Consulate confirmed receipt of these responses and materials within two hours, indicating that "[w]e are now able to continue processing your DV visa application" and "will contact you again once the administrative processing has been completed." *Id.* at 11–12.

On July 29, 2022, the Consulate contacted Plaintiff by email, requesting additional information," including: a "CV/Resume, including list of publications and references," a "[d]etailed study/research plan and its practical application," and "[s]ource of funding for research or degree." *Id.* at 3. Plaintiff responded to this request on August 1 and 2, 2022. *Id.* at 3–4. Again, the Consulate confirmed receipt of the additional materials. *Id.* at 4, 5. In his TRO/PI Motion, Plaintiff claims that his visa application has since remained in "administrative processing." Pl.'s TRO/PI Mot. at 6.

Plaintiff filed his Complaint in this action on August 29, 2022. In his Complaint, Plaintiff alleges that Defendants have unlawfully withheld and unreasonably delayed the adjudication of his visa petition under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b). Compl. ¶¶ 17–26, 27–32. He seeks an order compelling Defendants to "process Plaintiff's visa application within (15) days." *Id.* ¶ 33(b).

On September 2, 2022, Plaintiff filed his emergency TRO/PI Motion, seeking an order compelling Defendants to complete adjudication of his diversity petition. Plaintiff contends that if Defendants fail to complete adjudication of his visa petition by the September 30 deadline, he will "suffer significant hardship." Pl.'s TRO/PI Mot. at 6.

The Court set a briefing schedule on Plaintiff's TRO/PI Motion during a teleconference with the parties on September 7, 2022. *See* Minute Order (Sept. 7, 2022). On September 8, 2022, Defendants filed their consolidated opposition and motion to dismiss Plaintiff's Complaint. Plaintiff filed a reply in support of his TRO/PI Motion on September 12, 2022.

## II.    LEGAL STANDARD

A temporary restraining order "is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Postal Police Officers Ass'n v. United States Postal Serv.*, 502 F. Supp. 3d 411, 418 (D.D.C. 2020) (quoting *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)).   An application for a TRO is analyzed using the same factors applicable to a request for preliminary injunctive relief.  *See, e.g.*, *Gordon v. Holder*, 632 F.3d 722, 723–24 (D.C. Cir. 2011) (applying preliminary injunction standard to district court decision denying motion for TRO and preliminary injunction); *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011) (articulating TRO elements based on preliminary injunction case law).

Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (internal quotation marks omitted)).   A plaintiff seeking preliminary injunctive relief "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley*, 644 F.3d at 392 (internal quotation marks omitted)).   When seeking such relief, "the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C.

Cir. 2009)) (internal quotation marks omitted).  "The four factors have typically been evaluated on a 'sliding scale.'"  *Davis*, 571 F.3d at 1291.  Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor."  *Id.* at 1291–92.

It is unclear whether the United States Court of Appeals for the District of Columbia Circuit's ("D.C. Circuit") sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter*. *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015).  Several judges on the D.C. Circuit have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'"  *Sherley*, 644 F.3d at 393 (quoting *Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring)).  However, the D.C. Circuit has yet to hold definitively that *Winter* has displaced the sliding-scale analysis.  *See id.*; *see also Save Jobs USA*, 105 F. Supp. 3d at 112.  In light of this ambiguity, the Court shall consider each of the preliminary injunction factors and shall only evaluate the proper weight to accord the likelihood of success if the Court finds that its relative weight would affect the outcome.

### III.   DISCUSSION

For the reasons set forth below, the Court concludes that Plaintiff has not carried his burden of demonstrating a likelihood of success on the merits, a certainty of irreparable harm, or that the balance of the equities and the public interest tilt in his favor.  Accordingly, the Court **DENIES** Plaintiff's emergency motion for a temporary restraining order and preliminary injunction.

### A.  Likelihood of Success on the Merits

First, in order to receive a TRO, the moving "party must show, among other things, 'a substantial likelihood of success on the merits.'"  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d

905, 913 (D.C. Cir. 2015) (quoting *Mills v. District of Columbia*, 571 F.3d 1304, 1308 (D.C. Cir. 2009)).   The D.C. Circuit has identified a "likelihood of success on the merits" as the "most important factor" for courts to consider when contemplating a motion for preliminary injunctive relief.  *Aamer*, 742 F.3d at 1038.

Plaintiff argues that Defendants have unreasonably delayed and unlawfully withheld adjudication of his visa application, in violation of section 706(1) of the APA and the Mandamus Act.  *See* Pl.'s TRO Mot. at 6,   For the reasons set forth below, the Court concludes that Plaintiff has failed to carry his burden of demonstrating a substantial likelihood of success on the merits of his claims.

### 1.  Unlawfully Withheld

The Court first addresses Plaintiff's passing reference to a claim that Defendants have "improperly withheld action" on his diversity visa.  Pl.'s TRO/PI Mot. at 6.  The APA authorizes courts to "compel agency action unlawfully withheld[.]"  *Id.* § 706(1).  Section 706(1) "empowers a court to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) (internal citations and quotation marks omitted).  Similarly, mandamus relief cannot be used to "compel or control a duty in the discharge of which by law [a federal officer] is given discretion" and is only appropriate where the defendant official owes the petitioner a clear and nondiscretionary duty.  *Work v. United States ex rel. Rives*, 267 U.S. 175, 177–78 (1925); *see also Heckler v. Ringer,* 466 U.S. 602, 616 (1984).

Although Plaintiff's TRO Motion identifies no source of any "non-discretionary" duty, in his Reply, he cites 8 U.S.C. § 1202(b) for the proposition that the government has a "non-discretionary" duty to adjudicate *his* diversity visa application.  Section 1202(b) provides, in relevant part: "All immigrant visa applications shall be reviewed and adjudicated by a consular

officer." But Plaintiff cites no authority supporting his contention that Defendants have a non-discretionary, mandatory duty to complete its review of *his* particular visa application by the fiscal deadline. *See, e.g.*, *Pushkar v. Blinken*, Civ. Action No. 21-2297 (CKK), 2021 WL 4318116, at *10 (D.D.C. Sept. 23, 2021). In *Pushkar*, the Court addressed the decision by another court in this jurisdiction that held that § 1202(b) "imposes a nondiscretionary duty on Defendants to adjudicate diversity visas[.]" 2021 WL 4318116, at *10 (citing *Filazapovich*, 2021 WL 4127726, at *17). But, in that case, the plaintiffs challenged not only the government's failure to adjudicate their individual visa petitions, but also general policies that halted all diversity processing at the beginning of FY2021. As with the plaintiff in *Pushkar*, Plaintiff here makes no such challenge.

Moreover, Plaintiff's claim is less persuasive than those in *Pushkar* and other cases from this jurisdiction in which the DV applicant had not been scheduled for an interview before a consular officer. Plaintiff attended an interview with a consular officer, who determined that he was ineligible based on the applications materials before him. *See* Pl.'s TRO/PI Mot. Ex. B, at 18.

Plaintiff has not carried his burden of demonstrating a substantial likelihood of success on the merits of his claim that Defendants have unlawfully withheld action on his diversity visa petition under the APA.

### 2. Unreasonably Delayed

The bulk of Plaintiff's TRO Motion focuses on his claim that Defendants have unreasonably delayed processing his visa application. Pl.'s TRO/PI Mot. at 6–7. The APA requires that agencies "within a reasonable time . . . shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). If agencies fail to do so, courts may "compel agency action . . .unreasonably delayed." *Id.* § 706(1). To determine whether Plaintiff is likely to succeed on his claim that Defendants' adjudication of his diversity visa application is "unreasonably delayed,"

the Court applies the six factors laid out by the D.C. Circuit in *Telecomms. Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984):

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (applying *TRAC* factors to claim for mandamus relief).  Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

      a.   *TRAC* Factor 4

The D.C. Circuit has emphasized the "importance of competing priorities in assessing the reasonableness of an administrative delay."  *Id.* at 1100 (internal quotation marks omitted).  It therefore has refused to grant relief—even where all other *TRAC* factors favored relief— where "a

judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991); *see also Xiaobing Liu v. Blinken*, --- F. Supp. 3d ---, 2021 WL 2514692, at *7 (D.D.C. June 18, 2021) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay."); *Verma v. USCIS*, Civil Action No. 20-3419 (RDM), 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020) ("To grant Plaintiff priority would push those individuals further back in line when the only difference between them is that plaintiff has brought a federal lawsuit." (internal quotation marks and citations omitted)).  Courts in this jurisdiction routinely decline to grant relief that would place one prospective visa applicant ahead of others. *See, e.g.*, *Xiaobing Liu*, 2021 WL 2514692, at *7; *Desai v. USCIS*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021); *Verma*, 2020 WL 7495286, at *9.

Defendants contend that granting Plaintiff the relief he seeks in his TRO motion would merely "move his visa case to the front immediately, displacing other noncitizens" awaiting adjudication of their petitions.  Defs.' Opp'n & Mot. to Dismiss at 28.  In other words, expediting review of Plaintiff's application would "merely direct government resources" from the adjudication of other visa applications." *Ghadami v. Dep't of Homeland Sec.*, No. 19-00397, 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020).   Any such order would plainly interfere with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d at 76. Based on similar circumstances, this Court has concluded that this *TRAC* factor weighs "heavily" in favor of Defendants. *Pushkar*, 2021 WL 4318116, ay *7.

Plaintiff attempts to distinguish the facts of his case from those in *Pushkar*.  He first notes that unlike the plaintiff in *Pushkar*, he has already completed an interview.  Pl.'s Reply at 17.  He

contends that this demonstrates that he "has satisfied all of the prerequisites of the visa application, as well as the interview." *Id.* at 16.  But the consular officer concluded that additional information was required to issue a diversity visa.  *See* Pl.'s TRO/PI Mot. Ex. B, at 18.  As such, Plaintiff's claim that (in his own opinion) he "has satisfied" the prerequisites to obtain a diversity visa is misplaced.

Next, Plaintiff contends that granting the injunctive relief he seeks would "not put him at the 'head of the queue'" but will instead "place him back on track where his case originally belonged." Pl.'s Reply at 17.  This argument is based on his claim that he has "been taken out of the queue for some unexplained reason." *Id.* at 16.  But, based on the record, it appears that Plaintiff's diversity visa was "refused" based on the conclusion that additional information was required.  He does appears to have submitted the requested information, but it is not clear to the Court how granting Plaintiff the emergency injunctive relief he seeks would do anything other than direct the agency to reallocate its resources to reviewing *his* application and *his* supplemental documents—and away from those of other visa applicants.

As this factor weighs heavily in favor of Defendants, Plaintiff is not likely to show likelihood of success on the merits as to the fourth *TRAC* factor.

      b.  <u>*TRAC* Factors 1 and 2</u>

The first and second *TRAC* factors require the Court to consider whether a "rule of reason" governs the time agencies take to make decisions and whether a "statutory timeline" supplies content for the "rule of reason" inquiry.  *TRAC*, 750 F.2d at 80.  Courts "typically consider [the

first and second factors] together." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317–18 (D.D.C. 2020).

Plaintiff has not demonstrated a substantial likelihood that the first factor weighs in his favor. "Whether the State Department has a 'rule of reason' 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" *Id.* (quoting *Mashpee*, 336 F.3d at 1102). Plaintiff presents no argument in his TRO/PI Motion that Defendants' timing in processing his diversity visa is not guided by a "rule of reason." Rather, based upon the record before the Court at this early procedural juncture, Plaintiff's visa number did not become "current" until the late spring of 2022—at which point he became eligible for an interview. Defendants have explained that the order in which diversity visa petitions are adjudicated turns on, among other things, the priority number of the particular applicant, whether he was "documentarily qualified," and the conditions at the consulate where the selectee's application would be processed. *See* Miles Decl. ¶¶ 9, 10; *see also Gjoci*, 2021 WL 3912143, at *13. Plaintiff has provided no contrary arguments or facts to suggest that Defendants' alleged "delay" in processing his visa application is contrary to a rule a reason.

Other courts in this jurisdiction have concluded that the INA "provides a clear indication of the speed with which it expects the agency to proceed in processing diversity lottery selectees' visa applications, which supplies content for the *TRAC* rule of reason." *Gomez I*, 485 F. Supp. 3d at 196 (internal quotation marks and citations omitted); *see also Filazapovich*, 2021 WL 4127726, at *18. The court in *Gomez I* reasoned that § 1154 "sets an absolute, unyielding deadline by which selectees must receive their visas: 'Aliens who qualify, through random selection, for a visa under

section 1153(c) of this title shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected.'"  485 F. Supp. 3d at 196 (quoting 8 U.S.C. § 1154(a)(1)(I)(ii)(II)).  As in *Gomez I*, Defendants here argue that this provision does not expressly require the State Department to conclude processing diversity visas by that date; it speaks only to the time period during which selectees are eligible to obtain a visa (upon completion of all necessary prerequisites).  *See* Defs.' Opp'n at 24–26; *Gomez I*, 485 F. Supp. 3d at 196.  But the court in *Gomez I* pointed out that the *TRAC* factor 2 inquiry may be satisfied not only by "an express timetable," but instead by "any other indication [ ] of speed."  *Gomez I*, 485 F. Supp. 3d at 196 (citing *TRAC*, 750 F.2d at 80).  The *Gomez I* court concluded that "'[t]he specificity and relative brevity' of the September 30 deadline manifests Congress's intent that the State Department undertake good-faith efforts to ensure that diversity visas are processed and issued before the deadline."  *Id.* (quoting *In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 837 (D.C. Cir. 2012)).

Although the September 30 deadline to issue diversity visas suggests the "speed" at which Congress intended these visas to be processed, the INA does not impose any obligation on Defendants to process *all* diversity visas by the end of the fiscal year.  *See* 8 U.S.C. § 1154(a)(1)(I)(ii)(II) ("[A]liens who qualify, through random selection, for a visa shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected."); *see Gomez I*, 485 F. Supp. 3d at 196 (observing that there is "no statutory requirement that every available diversity visa be issued each year").

Plaintiff's arguments to the contrary are unpersuasive; he contends that it runs "contrary to reason" for the "Government to offer lottery visa opportunities to individuals and families . . . if it were incapable of processing these visa applications before the statutory deadline."  Pl.'s Reply at

19.   The Court disagrees.   Instead, the Court finds reasonable and practical Defendants' explanation that it seeks more applications than the number of available diversity visas to ensure that as many of the annually allocated diversity visas are assigned to eligible applicants. *See* Miles Decl. ¶ 4.

In sum, Plaintiff has not demonstrated that he is likely to succeed on the merits of his unreasonable delay claim as to the first *TRAC* factor.   The second *TRAC* factor is a closer call; Congress has conveyed its intent that a certain number of diversity visa applications be processed by the end of the fiscal year.   However, there is plainly no statutory obligation requiring *all* visa applications to be processed, much less Plaintiff's particular petition. The Court finds that, at most, the second *TRAC* factor is evenly balanced between the two parties.

c.   *TRAC* Factors 3 and 5

The third and fifth factors are often considered together, and require the Court to consider the "nature and extent of interests prejudiced by delay" and whether "human health and welfare are at stake."  *TRAC*, 750 F.3d at 80.

Plaintiff may succeed on the merits of the fifth *TRAC* factor—that he will be prejudiced by the failure to obtain a visa by September 30.  *If* Defendants fail to process his visa by September 30 (that date has not yet passed), he will lose his opportunity to immigrate to the United States through this fiscal year's diversity visa program.  Plaintiff has not demonstrated, however, that the third *TRAC* factor weighs in his favor.  He indicates that he has suffered "financial hardship" associated with the application process, and would be "deprived of educational, career, and personal opportunities that [he] can only find in the United States."  Pl.'s TRO/PI Mot. at 9. Although the Court is sympathetic to these concerns, it must also be mindful that "'many others' face similarly difficult circumstances as they await adjudication of their visa applications."

*Mohammed v. Blinken*, 20-cv-3696 (TNM), 2021 WL 2866058, at *6 (D.D.C. July 8, 2021).  As noted above, an order compelling Defendants to process Plaintiff's visa application would merely move Plaintiff's application ahead of other visa petitioners to the front of the queue—to the detriment of other visa applicants who may be facing similar (or even more dire) circumstances.

Although Plaintiff has demonstrated that he may be prejudiced by Defendants' failure complete the processing of his visa application by the September 30 deadline, the Court is not persuaded that he has demonstrated that he is likely to succeed on the merits with respect to the consideration of "human health and welfare"—because it is not just his "health and welfare" that the Court must consider, but also that of others similarly-situated.

       d.   *TRAC* Factor 6

The sixth *TRAC* factor notes that the "Court need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9.  Plaintiff here makes no argument of any agency "impropriety."  Accordingly, the Court makes no finding with respect to the sixth *TRAC* factor.

***

In sum, Plaintiff has not demonstrated a likelihood of success on the merits of his unreasonable delay claim. Although Plaintiff may succeed in showing that Congress has indicated the "speed" by which it intended a specified number of diversity visas to be processed and that he will be prejudiced if he fails to receive a visa by September 30, 2022, he has failed to carry his burden of demonstrating a substantial likelihood of success as to the remaining factors.  Most notably, the TRO/PI he seeks would interfere with Defendants' allocation of resources and ability to assess competing priorities (including the processing of thousands of visa applications) by moving his particular application to the front of the line.  It would also affect other visa applicants,

by potentially moving back their position in the queue.  Plaintiff has not demonstrated a likelihood of success that the *TRAC* factors favor him, warranting relief under the APA or the Mandamus Act.

****

For the reason set forth above, based upon the present record at this preliminary stage of litigation, Plaintiff has not demonstrated that he is likely to succeed on the merits of his APA or Mandamus Act claims challenging Defendants' alleged unreasonably delayed and unlawfully withheld adjudication of his diversity visa petition.

## B.  Irreparable Harm

The Court next considers whether Plaintiff has demonstrated "irreparable harm." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).  To constitute "irreparable harm," the injury alleged must be "both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quotation omitted).  And "[p]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original) (internal citations omitted).  "[P]ossibility of irreparable harm" is not enough.  *Id.*  "[P]roving 'irreparable' injury is a considerable burden, requiring proof that the movant's injury is 'certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm.'" *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (internal citation omitted).

Here, Plaintiff argues that if his visa is not issued by September 30, 2022, he will lose his opportunity to obtain a diversity visa.  Pl.'s TRO Mot. at 10.  However, compelling Defendants to

complete its processing of his supplemented diversity visa application would not necessarily result in his receipt of a visa; his visa application could potentially be denied.  *See Almaqrami*, 933 F.3d at 777 ("*[I]f he meets the criteria to obtain one,* the State Department shall issue him a diversity visa.").  Here, a consular officer has already denied Plaintiff's visa application, concluding that additional information was required before he could be deemed eligible for a diversity visa.  *See* Pl.'s TRO/PI Mot. Ex. B, at 18.  Plaintiff cannot unilaterally assess his own eligibility for a visa; that is within the purview of a consular officer.

Plaintiff's TRO/PI Motion relies on the flawed premise that, by being selected in the diversity visa lottery and submitting the required documents, he is guaranteed a visa.  Not so.  He was instead guaranteed the opportunity to *apply* for one of approximately 55,000 available visas— as were the other 63,752 selectees (and their beneficiaries).  "Because an injunction will not redress [his] alleged injuries, [plaintiff's] claim that [he] will suffer irreparable harm in the absence of a preliminary injunction is tenuous at best." *Sierra Club v. Dep't of Energy*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011) (quoting *Navistar, Inc. v. EPA*, 2011 WL 3743732, at *3 (D.D.C. Aug. 25, 2011)).  Accordingly, the Court finds that Plaintiff has not carried his burden of establishing certain irreparable harm, absent the specific injunctive relief he seeks from this Court.

**C.  Balance of Harms and Public Interest**

"The final two factors the Court must consider when deciding whether to grant a [temporary restraining order] are the balance of harms and the public interest." *Sierra Club v. U.S. Army Corps of Engineers*, 990 F. Supp. 2d 9, 41 (D.D.C. 2013).  Where, as here, the government is a party to the litigation, these two factors merge and are "one and the same, because the government's interest is the public interest." *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016).  "Although allowing challenged conduct to persist certainly

19

may be harmful to a plaintiff and the public, harm can also flow from enjoining an activity, and the public may benefit most from permitting it to continue." *Sierra Club*, 990 F. Supp. 2d at 41. Therefore, when "balanc[ing] the competing claims of injury," the Court must "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.

      As to the balance of harms, Plaintiff argues only that compelling Defendants to complete its processing of Plaintiff's application would not "harm" consular staff because they are "processing visas and holding interviews." Pl.'s TRO/PI Mot. at 10. And, as to the public interest, Plaintiff only briefly addresses the "public interest" underlying the diversity visa program at large. *Id.* at 11. Neither of these arguments is sufficient to tilt either factor in Plaintiff's favor. Plaintiff has not argued that there is any "public interest" in expediting processing of *his* visa application, as opposed to any other diversity visa application or any other immigrant visa applications. Although the Court recognizes that Plaintiff may lose his opportunity to immigrate to the United States based on his selection in the 2022 fiscal year lottery if the processing of his diversity visa is not completed, it is not persuaded that this tips the balance of harms and the public interest in his favor. Granting Plaintiff's requested relief would require Defendants to re-order their processing queue, potentially allowing Plaintiff to move ahead of other similar-situated visa applicants—who, in turn, may lose their opportunity to obtain a visa. The Court reiterates that the number of applicants eligible for a diversity visa for the 2022 fiscal far exceeds the number of available visas. *See* Miles Decl. ¶ 4. As previously noted, being selected in the diversity visa lottery *does* not guarantee applicants the right to obtain a visa.

      Overall, the Court finds that Plaintiff has not demonstrated that the balance of the harms and the public interest weigh in favor of his requested TRO.

## IV.    CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court concludes that Plaintiff has failed to satisfy his burden of demonstrating a likelihood of success on the merits, a certainty of irreparable harm, or that the balance of hardships and the public interest weigh in his favor. Accordingly, the Court will **DENY** Plaintiff's [6] Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.  The Court further **HOLDS IN ABEYANCE** Defendants' [9] Motion to Dismiss.  The parties are directed to file a Joint Status Report on **SEPTEMBER 30, 2022**, as set forth in the Order accompanying this Memorandum Opinion.


                                    ____/s/_____
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge

**Date:** September 22, 2022